**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

J&J SPORTS PRODUCTIONS, INC.,

Plaintiff,

vs.

MAC'S BAR AND GRILLE, LLC, et al.,

Defendants.

Case No. 2:12-cv-01584-GMN-CWH

**REPORT & RECOMMENDATION**

This matter was referred to the undersigned pursuant to LR IB 1-4 on Plaintiff J&J Sports Productions, Inc.'s ("Plaintiff") Second Motion for Default Judgment (#20), filed July 8, 2013.

Plaintiff is seeking significant damages for alleged piracy under 47 U.S.C. § 605 and 47 U.S.C. § 553. Piracy under either statute is serious. However, in seeking to enforce the statutes, particularly on default judgment, it is paramount that a plaintiff not turn pirate itself. Here, Plaintiff has rolled out the sweeps and long nines in an all out effort to send Defendants to the murky depths of Davy Jones' Locker. It has done so on a thread-bare record, cookie-cutter pleadings, and the mistaken belief that the Court is Plaintiff's own personal Kraken to be unleashed on command.

**BACKGROUND**

Plaintiff filed its original complaint on September 6, 2012. (# 1). Plaintiff filed affidavits of service indicating Defendants were served pursuant to the requirements of Federal Rule of Civil Procedure 4. (#5) (#7). Plaintiff filed its first motion for entry of clerk's default on October 16, 2012, which was granted on October 17, 2012. (#9). On October 18, 2012, Plaintiff filed a motion for a default judgment. (#10). Shortly thereafter, Plaintiff filed an amended complaint (#11),

which was served on Defendants via United States mail on or about November 13, 2012. (#12). After filing and mailing its first amended complaint, Plaintiff filed a second motion for entry of default, which was granted. (#14). Approximately three months later, Plaintiff filed a second amended complaint (#15), which was also served via United States mail. (#16). Upon expiration of the time period to answer or otherwise respond to the second amended complaint, Plaintiff filed its third motion for entry of default, which was granted. (#18). Thereafter, Plaintiff filed its second motion for a default judgment (#20), which was referred to the undersigned. Pursuant to Fed. R. Civ. P. 55(b), the undersigned conducted a default hearing on August 14, 2013.

By way of the second amended complaint, Plaintiff alleges that it was granted the exclusive nationwide commercial distribution (closed-circuit) rights to televise three professional fights: (1) “Fight of the Year: The Rematch!” between Juan Manuel Marquez and Juan Diaz (telecast on July 31, 2010), (2) “Tactical Warfare” between Manny Pacquiao and Antonio Margarito (telecast on November 13, 2010), and (3) WBO World Welterweight Championship between Manny Pacquiao and Shane Mosley (telecast on May 7, 2011) (hereinafter “Programs”). *See* Second Amend. Compl. (#15) at ¶ 15. Plaintiff further alleges that it entered into sublicensing agreements with various commercial entities throughout North America for “the rights to publicly exhibit the Programs within ... commercial establishments in the hospitality industry.” *Id*. at ¶ 16. Plaintiff alleges that, despite knowing the Programs were not to be intercepted, received, or exhibited without authorization from Plaintiff, Defendants exhibited the Programs at the times of their respective transmissions at Mac’s Bar. *Id*. at ¶¶ 18, 19. Plaintiff further alleges that the unauthorized exhibition was done willfully and for purposes of direct or indirect commercial advantage or private financial gain. *Id*. at ¶ 19. Finally, Plaintiff alleges that by these acts Defendants willfully, maliciously, egregiously, and intentionally “obtained possession of the Programs and wrongfully converted the Programs to [their] own use and benefit,” thereby subjecting Plaintiff to severe economic distress and great financial loss. *Id*. at ¶¶ 30, 31. Based on the factual allegations set forth in the second amended complaint, Plaintiff seeks damages based on violations of 47 U.S.C. §605, 47 U.S.C. § 553, and for the tort of conversion. Plaintiff also seeks its attorney fees.

**DISCUSSION**

Federal Rule of Civil Procedure 55 governs default judgment. Rule 55 provides, in relevant part, that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." *See* Fed. R. Civ. P. 55(a). Upon the entry of default, the defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint. *Benny v. Pipes*, 799 F.2d 489, 495 (9th Cir. 1986); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation - other than one relating to the amount of damages - is admitted if a responsive pleading is required and the allegation is not denied."). "However, a 'defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. Cal. 2007) quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Rather, in determining whether to enter judgment on the default, the court must determine whether the well-pleaded allegations in the complaint support the relief sought. *See* 10A Wright, Miller & Kane, Federal Practice and Procedure § 2688 (3d ed.) ("[L]iability is not deemed established simply because of the default ... and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

Ultimately, "[i]f the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the 'amount and character' of the relief that should be awarded." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (citation omitted). A court has wide latitude and discretion in determining the amount of damages to award upon default judgment. *Elektra Entertainment Group, Inc. v. Crawford*, 226 F.R.D. 388, 394 (C.D. Cal. 2005) (citation omitted). While the court may conduct an evidentiary hearing to determine damages, it is not required to do so, but may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. Fed. R. Civ. P. 55(b). The choice as to whether a default judgment should be entered is within the sole discretion of the trial court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Default alone does not entitle a plaintiff to court-ordered judgment. *Id*. Instead, courts look at several factors before rendering a decision on default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). These factors are: (1) the

possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id*.

All *Eitel* factors outside of the policy favoring decisions on the merits favor default in this instance. Plaintiff would be prejudiced if unable to protect its exclusive broadcast rights from piracy. There does not appear to be other viable recourse to recoup damages for the alleged piracy. The complaint states a plausible claim for relief and sets forth sufficient factual detail to enable the determination of whether the claims are meritorious. Though the proposed order on default requests in excess of $100,000.00 in damages, the recommended damages will be significantly less and based on the calculation contemplated and authorized by statute as well as supported by the pleadings. Given the sufficiency of the complaint, the undersigned has little difficulty concluding that no genuine dispute of material fact would preclude granting of the motion. There is nothing to suggest that Defendants' failure to answer or otherwise respond is the result of excusable neglect. Based on the record, it appears Plaintiff's initial complaint was served in a manner consistent with Fed. R. Civ. P. 4. There are, however, significant questions regarding service of the subsequent amended complaints (discussed *infra*). Those issues, however, do not prevent the court from entering default. Lastly, the policy favoring decisions on the merits is not, standing alone, sufficient to prevent default judgment.

**1. Requested Damages**

As provided in Rule 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Plaintiff, in its proposed order on default, requests damages as follows: (1) $83,250.00 for violation of section 605(e)(3)(c)(i)(II); (2) $15,000.00 for violation of section 605(e)(3)(c)(ii); (3) $6,600.00 for the tort of conversion; and (4) $1,800.00 in attorney fees. The combined total of the requested award is $106,650.00. The Court notes that, though damages were sought under both Section 605 and Section 553 in the complaint, Plaintiff limits its request to statutory damages available under section 605 in its

proposed order on default. This election is appropriate. *See J & J Sports Productions, Inc. v. Mendoza-Govan*, 2011 WL 1544886 ("[P]laintiff may not recover under both Section 553 and Section 605 for a single violation.") (citation omitted); *see also International Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1009 (2d Cir. 1999) (where liability exists under both Section 553 and Section 605, the court should impose damages pursuant to Section 605 instead of imposing the lesser damages available under Section 553), *aff'd*, 75 F.3d 123, 129; *accord Don King Productions/Kingvision v. Lovata*, 1996 WL 682006 (N.D. Cal.).

Section 605 prohibits the unauthorized interception of cable programming. *See e.g. Joe Hand Promotions, Inc. v. Pete*, 1999 WL 638215. A plaintiff may elect recovery of either actual or statutory damages in the event of violation of Section 605. *See* 47 U.S.C. § 605(e)(3)(C)(i)(I)-(II); *see also e.g. J & J Sports Productions, Inc. v. Parayno*, 2013 WL 5800587 (N.D. Cal.) ("An aggrieved person . . . may elect to recover either statutory or actual damages."). In this case, based on the damages calculation set forth in the proposed order on default, it is clear that Plaintiff has elected to pursue statutory damages under Section 605(e)(3)(C)(i)(II), which range from "a sum of not less than $1,000 or more than $10,000, as the court considers just" for each violation. *Id*. If the court finds that "a violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," it may, in its discretion, increase the amount "by an amount of not more than $100,000 for each violation." *See* 47 U.S.C. § 605(e)(3)(C)(ii). In addition to the possibility for enhanced damages, a court may also reduce the statutory award "[i]n any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation" to an amount not less than $250.00. *See* 47 U.S.C. § 605(e)(3)(C)(iii). Plaintiff, as an "person aggrieved" under Section 605, is entitled "to the recovery of full costs, including awarding reasonable attorneys' fees. . . ." *See* 47 U.S.C. § 605(e)(3)(B)(iii).

Like Judge Burns in *Joe Hand Promotions, Inc. v. Streshly*, 655 F.Supp.2d 1136 (S.D. Cal. 2009), the undersigned is baffled by the excessive nature of the damages requested by Plaintiff under Section 605(e)(3)(c)(i)(II). 655 F.Supp.2d at 1139. Plaintiff is a frequent litigator on these very issues as it aggressively seeks to protect its rights under Section 605. By the undersigned's conservative count, there are well over 100 cases within the Ninth Circuit where Plaintiff has filed

suit on the precise types of claims at issue here. Just within the District of Nevada, it appears Plaintiff has been a party in over 30 cases. Given the extensive history of litigating these very issues, the undersigned was surprised by the failure of Plaintiff to cite any case law or prior decision in support of its motion for default judgment and request for statutory and enhanced damages. There is significant case law with broad, wide-ranging damages awards. Rather than cite these cases or otherwise support its requested damages, Plaintiff has filed cookie-cutter pleadings seeking what Plaintiff (and its counsel) undoubtedly know is an implausible, legally unsupportable award. The undersigned is entirely willing to recommend a default judgment. Plaintiff is entitled to one. However, as succinctly stated in *Streshly*, "[t]he Court will not . . . indulge Plaintiff's attempt to obtain the biggest judgment it can by filing cookie-cutter pleadings that trivialize the particular facts of this case and ignore the voluminous case law that reveals its requested judgment to be so wildly out of the question." 655 F.Supp.2d at 1139.[1]

Based on the proposed order submitted with the motion for default, Plaintiff seeks $83,250.00 in statutory damages under Section 605(e)(3)(C)(i)(II), based on three separate violations. There is no plausible basis for this request.[2] Under Section 605(e)(3)(C)(i)(II), the range of potential statutory damages available for each violation would be from $1,000.00 to

---

[1] Other courts have also recognized this problem. *See Parayno*, 2013 WL 5800587 (Noting that "counsel for J & J Sports confirmed that it seeks the maximum award of damages in every case. It is hard to imagine a less persuasive strategy. Congress presumably established the maximum award to provide redress for the very worst violations of the statute, and by definition not *every* defendant in J & J Sports' cases can be the worst violator–even with respect to each other, much less all other violator[s] in the federal courts."); *see also Streshly*, 655 F.Supp.2d at 1136 ("'Shoot for the moon. Even if you miss, you'll land among the stars.' So the banal saying goes, and while it may be a laudable approach to life, it's an ill-advised strategy for obtaining a sizeable judgment in this Court. Plaintiff asks for a default . . . [t]hat is manifestly excessive under existing law–and Plaintiff probably knows it.").

[2] The affidavit submitted in support of the motion for default (*see* Dkt. (#24)) is contradictory and inconsistent. The affiant, the President of Plaintiff J & J Sports Productions, Inc., appears to ask for both statutory damages <u>and</u> actual damages. He sets out the sublicensing fees for each of the pirated events and requests an award of actual damages. *See* (#24) at 7:27-28. He also asks for an award of the statutory maximum of $100,000.00 in damages. As previously noted, A plaintiff must elect whether seek recovery of actual damages or statutory damages. *See* 47 U.S.C. §605(e)(3)(C)(i)(I), (II). Both the complaint and the proposed order on default indicate that Plaintiff seeks an award of statutory damages. Consequently, any request for an award based on the actual damages calculation set forth in the affidavit is and should be rejected.

$10,000.00. Not only does Plaintiff's request not comport with the statutory range, it offers no explanation for the glaring discrepancy. It cannot be argued that the discrepancy is a result of a requested "enhancement" under Section 605(e)(3)(C)(ii) because, as Plaintiff indicates, it seeks only $15,000.00 for "enhanced damages" in the proposed order on default. Thus, the undersigned is left to wonder how it is Plaintiff reached its figure of $83,250.00 in statutory damages. The only possible explanation is that Plaintiff believes it is entitled to statutory damages based on a violation of Section 605(e)(4). *See* 47 U.S.C. § 605(e)(3)(C)(i)(II) ("[F]or each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just."). However, nowhere in the pleadings, motion for default, or proposed order on default is that particular subsection referenced. Nor has Plaintiff identified any facts which would support an award under this subsection.

Further, Plaintiff requests $15,000.00 in "enhanced damages." This is significantly less than what J & J Sports Production, Inc.'s President seeks by way of his affidavit, which is the "maximum allowance for statutory damage, in the amount of $100,00.00, due to the fact that such actions are *per se* intentional . . . ." *See* Aff. (#24) at ¶ 13. The Court has discretion to "enhance" a damages award by up to $100,000.00 if the violation was willful and committed for purposes of direct or indirect commercial advantage or gain. *See* 47 U.S.C. § 605(e)(3)(C)(ii). "In the absence of unusual or particularly egregious circumstances under which a defendant broadcasts a fight, however, it would be inappropriate to award the statutory maximum." *E.g. Don King Productions/Kingvision v. Maldonado*, 1998 WL 879683 (N.D. Cal.) (citation omitted).

Importantly, "since ... allegations of willfulness bear directly on the question of damages, the mere assertion that [a defendant] acted willfully is insufficient to justify enhanced damages." *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F.Supp.2d 1196, 1198 (N.D. Cal. 2000) (citing *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.")). Additionally, "[t]o establish significant commercial advantage or private financial gain, a plaintiff must allege something more than the mere airing of a program,

such as engaging in promotional advertising, imposing a cover charge, or charging a premium for food or drinks." *See e.g. J & J Sports Productions, Inc. v. Garcia*, 2012 WL 4673518 (E.D. Cal.) (citing *Backman*, 102 F.Supp.2d at 1198). "The size of the audience, the establishment, or both is also relevant to the measure of enhance damages, as is whether the customers are present primarily to watch the broadcast or have come for another purpose while the program is being aired." *Garcia*, 2012 WL 4673518 *3 (citation omitted). "Awards should be proportional to the violation." *Id*. "Higher statutory awards are indicated for repeat offenders." *Id*.

Other than the submission of an affidavit stating a generalized displeasure with these known factors, Plaintiff has submitted nothing to suggest that Defendants obtained any "commercial advantage or private financial gain" as a result of airing the Programs in question. There is no evidence of a cover charge. There is no evidence that the Programs were promoted by the pirating establishment. There is no evidence of premiums charged for food. There is no evidence of the size of the establishment or the number of people in attendance while the Programs aired. There is no evidence that this Defendant is a repeat or flagrant violator. There is, quite simply, nothing in the record which supports the enhancement of any award under Section 605, and none will be recommended. A general disagreement with the types of facts that will support "enhancement" is not sufficient.

**2. Conversion**

Plaintiff's request for $6,600.00 in damages for the tort of conversion is equally conclusory and unsupported. In Nevada, a conversion occurs whenever there is a serious interference to a party's rights in his property. *Scaffidi v. United Nissan*, 425 F.Supp.2d 1159, 1168 (D. Nev. 2005). Without question, a finding that an individual or entity has committed a violation under Section 605 may also support a finding that the violator is liable for conversion. *J & J Sports Productions, Inc. v. Bonito Michoacan, Inc.*, 2013 WL 5234262 (D. Nev.). To recover, a Plaintiff is required to show proof of actual losses suffered. *Id*. at *6. "If the record reflects that the injured party suffered lost business as a result of the conversion, then the injured party is entitled to the value of lost business as compensation for actual losses." *Id*. (citation omitted).

The only proof offered by Plaintiff regarding damages for conversion is found in the

supporting affidavit (#24), which lists the commercial sub-license fee for each Program based on a maximum occupancy of 150 persons. There is, however, no evidence that Defendant's maximum occupancy even approaches 150. Plaintiff's counsel appears to be aware of this problem, as he requests only $6,600.00 in damages for conversion in the proposed order on default, which is approximately half of the total amount requested in the affidavit (#24). Using the exhibits submitted with the affidavit (#24), along with the damages amount listed by counsel in the proposed order, the undersigned will recommend damages on the conversion claim in an amount equal to the rate listed for the minimum seating for the Programs that are subject to this default judgment.

**3. Service of the Complaint/s**

Having established the general framework for the damages award, the Court circles back to address what, in the undersigned's view, represents the most egregious failing in Plaintiff's effort to obtain default judgment. Where entry of default judgment is requested, the Court must determine whether service of process was adequate. *Bank of the West v. RMA Lumber, Inc.*, 2008 WL 2474650 (N.D. Cal.) (citation omitted). The original complaint, filed September 6, 2012, identified Mac's Bar and Grille, LLC and Douglas P. McDonald as Defendants. The undersigned has little trouble concluding that, based on the record, it appears Defendant Mac's Bar and Grille, LLC was served properly in accordance with Fed. R. Civ. P. 4(h). *See* Aff. of Service (#5). Likewise, it appears from the record that Defendant Douglas P. McDonald, an individual, was served properly in accordance with Fed. R. Civ. P. 4(e). Upon expiration of time for Defendants to answer or otherwise respond to the original complaint, Plaintiff sought and obtained an entry of default. (#9). Subsequent to obtaining this initial default, Plaintiff amended his complaint twice and served both amended complaints by mail pursuant to Federal Rule of Civil Procedure 5.

Federal Rule of Civil Procedure 4 governs service of the original summons and complaint. Federal Rule of Civil Procedure 5, in turn, governs service of pleadings subsequent to the original complaint. However, Rule 5(a)(2) provides: "No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4." In instances where an amended complaint contains a new

claim, the applicability of Rule 5(a)(2) does not hinge on whether the court has actually adjudicated the party as being "in default" or not. *E.g. IBEW Local 595 Health & Welfare Trust Fund v. Givens Elect., Inc.*, 2011 WL 2414346 (N.D. Cal.) (citations omitted).

Under the circumstances, the question is whether Plaintiff's first and second amended complaint asserted new claims for relief and, therefore, should have been served pursuant to Rule 4. Without exalting form over substance, the Court must maintain fealty to the underlying purpose of Rule 5(a)(2): "[E]nsur[ing] that a party, having been served, is able to make an informed decision not to answer a complaint without fearing additional exposure to liability for claims raised in subsequent complaints that are never served." *Blair v. City of Worcester*, 522 F.3d 105, 109 (1st Cir. 2008). "Where changes made in an amended complaint are not substantial, the requirement of [Rule 5(a)(2)] that a pleading that states a new claim for relief against a party in default must be served on that party is not applicable." *Belkin v. Islamic Republic of Iran*, 667 F.Supp.2d 8, 20 (D.D.C. 2008) (citations omitted).

Upon review of the amended complaints in this matter, the undersigned finds that Defendants were not provided with adequate notice of the claims after Plaintiff's service of the original complaint. Plaintiff's first and second amended complaint both add substantial new claims that should have been served pursuant to Rule 4. In its second amended complaint, Plaintiff identifies three separate and distinct events to which it was granted the exclusive nationwide commercial distribution (closed-circuit) rights. However, Plaintiff's original complaint identifies only one of the alleged pirating acts, the "Fight of the Year: The Rematch!" between Juan Manuel Marquez and Juan Diaz (telecast on July 31, 2010). Plaintiff's first amended complaint, served pursuant to Rule 5, adds an additional claim for pirating based on an entirely different event: "Tactical Warfare" between Manny Pacquiao and Antonio Margarito (telecast on November 13, 2010). The second amended complaint identifies the third event for which Plaintiff seeks damages: WBO World Welterweight Championship between Manny Pacquiao and Shane Mosley (telecast on May 7, 2011).

The staggering of the pirated events into separate complaints appears deliberate and calculated. The original complaint was filed several months after the third and final pirated event.

It is the undersigned's view that Plaintiff has engaged in an attempt to raise additional, new claims without giving Defendants a fair and reasonable opportunity to be apprised of the claims through proper service under Rule 4. This conclusion is supported by the statutory construct under which Plaintiff elects to proceed. Each of the pirated events for which Plaintiff seeks damages constitutes a separate and distinct claim. Under both section 553 and section 605, the liability and damages determination is made separately for each alleged pirating act. Plaintiff's elected course for damages, section 605, permits either actual damages or statutory damages for each violation (see *supra*). The Court will not permit Plaintiff to add these additional claims through amended complaints served under Rule 5. Each additional event added to the amended complaints filed subsequent to the original complaint constitutes "new claims" as that term is understood in Rule 5(a)(2). Therefore, the amended complaints should have been served pursuant to Rule 4, not Rule 5.

Having so concluded, the Court finds that Plaintiff is not entitled to default judgment on the first or second amended complaint. The default judgment is limited to Plaintiff's original complaint, which alleges a single violation of section 605. *See Bricklayers and Allied Craftworkers Local Union No. 3 v. Palomino*, 2010 WL 2219595 n. 8 (N.D. Cal.) (citing *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 669 (2d Cir. 1977) (holding that where an amended complaint is required to be served under Rule 5(a)(2), the amended complaint does not supersede the original complaint until properly served); *Blair*, 522 F.3d at 109 (noting that "it is doubtful that the unserved complaint in fact superseded the original complaint"); *Doe v. Unocal Corp.*, 27 F.Supp.2d 1174, 1180 (C.D. Cal. 1998) (commenting that the rule on supersedure "more likely to be adopted" by the Ninth Circuit is the Second Circuit rule that an original complaint is not superseded until proper service of the amended complaint).[3]

---

[3] The Ninth Circuit appears to have addressed these issues in an unpublished opinion, *Anunciation v. West Capital Financial Services, Corp*., 97 F.3d 1458 (9th Cir 1996). In *Anunciation*, a party challenged a default judgment on the ground that an amended complaint should have been served pursuant to Rule 4. The Ninth Circuit agreed and cited *Int'l Controls Corp. v. Vesco*, 556 F.2d 665 (2d Cir. 1977) for the proposition that an amended complaint does not supersede an original complaint until it is properly served. The Ninth Circuit went on to hold in *Anunciation* that the original complaint remains viable on default judgment when an amended

**4. Fees and Costs**

A plaintiff who prevails on a claim under Section 605 is entitled to its reasonable attorneys' fees and costs. 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff requests $1,800.00 in attorneys' fees for 6 hours of work at a rate of $300.00 per hour. In the Ninth Circuit, the starting point for determining reasonable fees is the calculation of the "lodestar," which is obtained by multiplying the number of hours reasonable expended on litigation by a reasonable hourly rate. *See Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987). The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Financial, Inc.,* 523 F.3d 973, 978 (9th Cir.2008) (internal quotations and citation omitted). In calculating the lodestar, the court must determine a reasonable rate and a reasonable number of hours for each attorney. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir.1986), *reh'g denied, amended on other grounds,* 808 F.2d 1373 (9th Cir.1987). The lodestar is deemed to be presumptively reasonable, though the district court has the discretion to consider and upward or downward adjustment. "Even if a statute entitles Plaintiff to damages, Plaintiff must still show proof of the relief requested pursuant to Fed. R. Civ. P 54 and Local Rule 54. . . ." *Bonito Michoacan*, 2013 WL 5234262 at *7. Plaintiff's counsel, who was also counsel in *Bonito Michoacan*, is aware of this requirement. An affidavit should have been submitted with the motion for default, but was not. Even so, the Court is not inclined to punish Plaintiff for this failure. Plaintiff's counsel will be given an additional ten (10) days from this order to submit a fully compliant application for fees and costs not to exceed the $1,800.00 sought on default.

**CONCLUSION**

As noted at the outset, piracy is serious. Seeking to adjudicate lawful rights under section 605, however, is not license to pillage, plunder, and take vast amounts of booty to which there is no demonstrated right. There is a dearth of any evidence supporting the requested damages. Consequently, the undersigned will recommend the lowest end of the statutory range for the

---

complaint is not properly served. Ultimately, the Ninth Circuit determined that the district court did not error because it only entered default judgment on the claim raised in the original complaint and did not award damages on the claims added in the amended complaint that had not been properly served.

singular violation identified in the original complaint. Plaintiff is entitled to $1,000.00 in statutory damages under Section 605(e)(3)(C)(i)(II) with no enhancement under Section 605(e)(3)(C)(ii). Plaintiff is further entitled to $1,200.00 for the tort of conversion, which is an amount equal to the rate listed for the minimum seating for the Program identified in the original complaint.

Plaintiff is not some stowaway sailing on uncharted seas. It is a frequent litigator within the Ninth Circuit on the very issues raised herein. Plaintiff is undoubtedly aware, along with its counsel, of the requirements under Section 605 and Rule 553. Filings of the kind submitted here subject Plaintiff and its counsel to the real risk of being branded pirates themselves. Indeed, the pleadings and briefing in this piracy case give rise to the sensible question of exactly which party sails under the flag of the Jolly Roger. No amount of grandstanding or unsubstantiated claims will turn this defendant into Blackbeard. As aptly stated in *Streshly*, even if Defendants were "the Blackbeard of pirates . . . Plaintiff makes no attempt to portray it as such, and to the contrary, the act of piracy attributed to [Defendant] is as routine as they come . . . ." 655 F.Supp.2d at 1139. The filings and actions of Plaintiff in this matter leave much to be desired. Plaintiff and its counsel should take heed and keep a weather eye out, lest they be forced to walk the plank of Rule 11 sanctions in the future. Ye be warned.

Based on the foregoing and good cause appearing therefore,

**IT IS HEREBY ORDERED** that Plaintiff shall ten (10) days from the date of this Order and Recommendation to file an affidavit of reasonable costs and attorneys' fees.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Second Motion for Default Judgment (#20) be **granted in part and denied in part**.

**IT IS FURTHER RECOMMENDED** that Default judgment should be entered in favor of Plaintiff for $2,200.00, broken down as follows: (1) $1,000.00 in statutory damages for the violations under Section 605(e)(3)(C)(i)(II), and (2) $1,200.00 in damages for the tort of conversion.

## NOTICE

Pursuant to Local Rule IB 3-2 any objection to this Report and Recommendation must be in

writing and filed with the Clerk of the Court within 14 days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED: February 11, 2014.

**C.W. Hoffman, Jr.**
**United States Magistrate Judge**